# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

JONATHAN SHANE SPEARS, as          )
Administrator of the Estate of          )
EDWARD EUGENE SPEARS,          )
                              )
       **Plaintiff,**          )          No.: **2:10-cv-671-CSC**
**v.**          )
                              )
**DENNIS F. MEEKS, et. al.,**          )
                              )
      **Defendants.**          )

## MEMORANDUM BRIEF IN SUPPORT OF
## DEFENDANT DENNIS MEEKS'S MOTION TO DISMISS

COMES NOW Covington County Sheriff Dennis F. Meeks ("Sheriff Meeks"), a Defendant in the above-entitled action, and submits this Memorandum Brief in support of his contemporaneously filed Motion to Dismiss.

## INTRODUCTION

On August 5, 2010, the Plaintiff filed his three Count Complaint against Sheriff Meeks, Annette Cain, LPN (identified in the complaint as A. Cain"), Dianne Williams, LPN (identified in the complaint as D. Williams, LPN), Millard Henry McWhorter, III, MD and Southern Health Partners, Inc.[1]  The Plaintiff's first count is a 42 U.S.C. § 1983 deliberate indifference to medical needs claim that

---

[1] For ease of reference, Dr. McWhorter, Nurse Cain, Nurse Williams, and Southern Health Partners, Inc., will be referred to collectively herein as the "Medical Defendants".

1

appears to be directed against all of the Defendants.  The Plaintiff's remaining two counts are state law wrongful death claims against the Medical Defendants. Sheriff Meeks is sued in his individual capacity.  (See generally Doc. 1.)  Sheriff Meeks now moves the Court for an Order dismissing the Plaintiff's claims against him and awarding him costs and attorneys fees pursuant to 42 U.S.C. § 1988.

## FACTS

In sum, the Complaint alleges that the Plaintiff's decedent suffered a laceration of his right leg for which he received treatment four days prior to being incarcerated in the Covington County Jail.  (Doc. 1 at ¶¶ 11-12.)  The Complaint alleges that the decedent suffered from worsening symptoms and the "Defendants" did not alter or increase the treatment he was receiving.  (Doc. 1 at ¶¶13-14.) According to the Complaint, the decedent was eventually transferred to the emergency room on August 7, 2008, and died the next day due to systemic sepsis. (Doc. 1 at ¶¶ 15-16.)

The Complaint fails to mention Sheriff Meeks by name even one time in the Statement of Facts.[2]  (Doc. 1, pp. 3-4.)  Assuming, *arguendo*, that Sheriff Meeks is properly lumped together with the generalized allegations against "Defendants", he (and the other Defendants) is alleged to have been:

---

[2] In fact, Sheriff Meeks is mentioned by name only in the caption of the Complaint and in paragraph 2.  (See generally Doc. 1.)

1.     In "complete control" of the decedent's medical treatment. (Doc. 1 at ¶ 13.)

2.     Aware that the decedent's condition was worsening. (Doc. 1 at ¶ 13.)

3.     Violated "the relevant standard of care in the relevant medical community" by failing "to appropriately alter or increase treatment for [the decedent's] condition . . ." (Doc. 1 at ¶ 14.)

4.     Transported the decedent to Andalusia Regional Hospital on August 7, 2008. (Doc. 1 at ¶ 15.)

There are no allegations in the Complaint that Sheriff Meeks is a nurse or doctor. Consequently, it is unclear what "relevant medical community" he belongs to, and what the standards of that community might be. Finally, the Complaint does not contain any facts with respect to any of the Defendants as to what each specifically did/failed to do, what they were specifically aware of, and how they were specifically aware of it. (See generally Doc. 1.)

## ARGUMENT

Sheriff Meeks moves the Court for an Order granting him two forms of relief. First, he seeks a dismissal of all the Plaintiff's claims against him because the plaintiff has failed to plead sufficient facts entitling him to relief and Sheriff Meeks is clearly entitled to qualified immunity. Second, because the Plaintiff's claims against Sheriff Meeks are so obviously frivolous and groundless, Sheriff

Meeks seeks an award of attorney's fees and costs incurred in defending this baseless action against him.

## I. PLAINTIFF HAS FAILED TO PLEAD SUFFICIENT FACTS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

The United States Supreme Court has rejected the "no set of facts" standard for determining the sufficiency of a complaint challenged by a Rule 12(b)(6) motion. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (overruling Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).[3]  Regarding Conley, the Supreme Court noted that the "no set of facts" language had been essentially taken out of context for fifty years.  550 U.S. at 562-63.  On "a focused and literal reading of Conley's 'no set of facts,' a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  Id. at 562. Instead, the Twombly Court held that

> this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: *once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.*

550 U.S. at 563 (emphasis added).

---

[3] See also Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005); O'Brien v. DiGrazia, 544 F.2d 543, 546, n.3 (C.A. 1 1976) ("[W]hen a plaintiff . . . supplies facts to support his claim, we do not think that Conley imposes a duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional . . . action into a substantial one"); McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (C.A. 6 1988) (quoting O'Brien's analysis).

What a complaint needs, in the <u>Twombly</u> Court's view, is facts.  As a general rule, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . ." 550 U.S. at 555.  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Id.</u> (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." <u>Id.</u>

Even under Rule Fed. R. Civ. P. 8(a), there must be a "'statement of circumstances, occurrences, and events in support of the claim presented' and . . . not . . . a pleader's 'bare averment that he wants relief and is entitled to it.'" <u>Twombly</u>, 550 U.S. at 555 (citations omitted).  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim but also 'grounds' on which the claim rests." <u>Id.</u> (citations omitted).  Furthermore, "[p]leadings must be something more than an ingenious academic exercise in the conceivable." <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1037 (11th Cir. 2001) (<u>en banc</u>).  Unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal under Rule 12(b)(6).  <u>Marsh</u>, 268 F.3d at 1036 n.16; <u>see also</u> <u>South Florida Water Mgmt. Dist. v. Montalvo</u>, 84 F.3d 402, 408 n.10 (11th Cir. 1996)

(noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss").

The Supreme Court has explained that "it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009); see also id. at 1950 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief.") (quoting Fed. R. Civ. P. 8(a)(2)).

The requirement of a sufficient factual predicate for the legal allegations of the complaint is especially significant in the context of § 1983 suits against individual government officials, whose conduct is presumed legitimate, and who may assert the defense of qualified immunity.  See, e.g., Omar ex rel. Cannon v. Lindsey, 334 F.3d 1246, 1248 (11th Cir. 2003) (noting that the qualified immunity analysis requires "careful examination of the facts at hand"); Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir.2003) ("We must also keep in mind the fact that we generally accord official conduct a presumption of legitimacy.") (alterations omitted).

As set out above, the plaintiff has utterly failed to assert any specific allegations against Sheriff Meeks.  Instead, Sheriff Meeks is lumped into general allegations against "the Defendants" based on an alleged failure to provide medical treatment to the plaintiff's decedent.

Clearly, these allegations do not suffice under the basic pleading standard that controls "in all civil actions."   Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1953 (2009) (quoting Fed. R. Civ. P. 1).  Even a perfunctory review of the Supreme Court's decision in Iqbal makes clear that the allegations of the complaint in this case fall far short of meeting the most fundamental requirements for a successful pleading:  i.e., setting out actual facts that amount to "more than a 'formulaic recitation of the elements' of a constitutional discrimination claim."  Id. at 1951 (quoting Twombly, 550 U.S. at 555, 1127 S.Ct. 1955).

The plaintiff in Iqbal alleged in his complaint that he was arrested on criminal charges following the September 11, 2001 terrorist attacks.  Iqbal, 129 S.Ct. at 1942.   He alleged that he was "deprived of various constitutional protections while in federal custody," and he sued former Attorney General John Ashcroft and former FBI Director Robert Mueller, asserting that they developed the policies that resulted in the constitutional violations.  Id.  The allegations of the complaint pertaining to these policies were quoted at length in the Supreme Court's opinion:

The allegations against petitioners are the only ones relevant here. The complaint contends that petitioners designated respondent a person of high interest on account of his race, religion, or national origin, in contravention of the First and Fifth Amendments to the Constitution. The complaint alleges that "the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men ... as part of its investigation of the events of September 11." It further alleges that "[t]he policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." Lastly, the complaint posits that petitioners "each knew of, condoned, and willfully and maliciously agreed to subject" respondent to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The pleading names Ashcroft as the "principal architect" of the policy, and identifies Mueller as "instrumental in [its] adoption, promulgation, and implementation."

Id. at 1944 (record citations omitted).  Based on these allegations, Ashcroft and Mueller moved to dismiss "for failure to state sufficient allegations to show their involvement in clearly established unconstitutional conduct." Id.

After setting out the pleading standards first articulated in Twombly, the Court in Iqbal began its analysis "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Writing to the allegations that the defendants "knew of, condoned, and willfully and maliciously agreed" to subject plaintiff to harsh treatment "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest," the Court characterized them as "bare assertions,"

8

set forth in "conclusory" form, and held that they were "not entitled to be assumed true." <u>Id</u>. at 1951.  The Court reached an identical conclusion as to the allegation that Ashcroft was the "principal architect" of the policy, and that Mueller was "instrumental" in its adoption and execution. <u>Id</u>.  Having done so, the Court went on to examine certain additional allegations which, although deemed factual in nature, were merely "consistent with" the legal conclusions described above, and did not suffice to render such conclusions "plausible." <u>Id</u>.  Such averments merely alleged that Muslim men similarly situated to the plaintiff were arrested by the thousands in the wake of September 11, and that the detention of such men was approved by Ashcroft and Mueller.  Those allegations being insufficient standing alone, the Court concluded that there was not enough "factual content to nudge [plaintiff's] claim of purposeful discrimination across the line from conceivable to plausible." <u>Id</u>. at 1952 (internal quotations and citation omitted).

Like <u>Iqbal,</u> the plaintiff's complaint in the case at bar fails to state "a *plausible* claim for relief," against Sheriff Meeks.  Indeed, the plaintiff's complaint contains no specific allegations against Sheriff Meeks and no specific factual content aimed at anything that Sheriff Meeks might have done or failed to do.  As such, pursuant to the pleading guidelines set forth in <u>Twombley</u> and <u>Iqbal</u>, the plaintiff's complaint is due to be dismissed.

9

## II.   SHERIFF MEEKS IS ENTITLED TO QUALIFIED IMMUNITY.

The Plaintiff's federal individual capacity claim fails as a matter of law because Sheriff Meeks is entitled to qualified immunity.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Once determined that a defendant acted within his discretionary authority, courts use a two-part test to determine whether qualified immunity is proper.  In Saucier v. Katz, the Supreme Court directed courts to use the following two-part test to determine whether qualified immunity applies:  first, the court determines whether there was a constitutional violation; second, the court determines whether the constitutional right in question was clearly established at the time of the alleged violation of the right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Recently, however, the Court abandoned the rigid order of analysis enunciated in Saucier and held that courts are no longer required to first determine whether there was a constitutional violation.  Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808 (2009).

> On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and

10

the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

Pearson, 129 S.Ct. , at 818.

## A.   Sheriff Meeks Acted Within His Discretionary Authority.

Once a public official has asserted the defense of qualified immunity, he bears the burden of proving that he was acting within his discretionary capacity. Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988).  In order to establish that he is acting within his discretionary capacity, a public official asserting qualified immunity need only show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority."  Id. at 1564 (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981)).  Courts should not be "overly narrow" in interpreting this requirement. Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994).  To determine this question "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (citation omitted).  As one district court observed, "the determination that an officer was acting within his

11

discretionary authority is quite a low hurdle to clear." Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

In the instant case, Sheriff Meeks acted within his discretionary authority. It is only by virtue of his position as Covington County Sheriff that he has any authority over or responsibility for the inmates housed in the Covington County Jail. It cannot be reasonably argued that providing medical care to inmates is outside the scope of the responsibilities of an Alabama Sheriff. Consequently, Sheriff Meeks easily clears the low hurdle of establishing that he acted within his discretionary authority. James, 157 F.3d at 1282.

## B. Sheriff Meeks Did Not Violate the Plaintiffs' Federally Protected Rights.

The Complaint does not allege any facts from which it could be determined that Sheriff Meeks violated the Plaintiff's decedent's rights. First, to the extent the Plaintiff may be attempting premise liability on a *respondeat superior* theory, he may not do so as a matter of law. Second, the Plaintiff cannot maintain both Eighth and Fourteenth Amendment claims. Third, the Complaint does not allege facts that support a deliberate indifference claim against Sheriff Meeks.

### 1.   The Plaintiff cannot base his claims on vicarious liability.

To the extent that Plaintiff's claims against Sheriff Meeks are an attempt to hold him liable under a *respondeat superior* theory, they must fail. Neither the

express language of § 1983 nor the holdings of the United States Supreme Court support liability on this basis.

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, **subjects, or causes to be subjected**, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added.)  The language of the statute requires that there be a direct causal link between plaintiff and the actions of a putative defendant.  Merely employing an individual who causes harm is insufficient to invoke the remedy of this statute. The United States Supreme Court addressed this exact issue and adopted this holding over 30 years ago.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

The Complaint is wholly deficient with respect to its allegations regarding the relationship between Sheriff Meeks and the Medical Defendants.  However, to the extent the allegations in the Complaint can be construed as making out an employer/employee relationship between Sheriff Meeks and any of the Medical Defendants, such a relationship standing alone cannot result in Sheriff Meeks being liable for the alleged violations of the decedent's rights.  Monell, 436 U.S. at 691; See also West v. Tillman, 496 F.3d 1321, 1328 (11th Cir. 2007) ("It is well

13

established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."

### 2.   The Plaintiff cannot maintain both Eight and Fourteenth Amendment claims.

In paragraph 19 of the Complaint, the Plaintiff makes a completely inaccurate statement of law when he asserts that the "'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment to the United States Constitution [is] made applicable to the States through the Fourteenth Amendment . . ." Regardless of the incorporation status of the Eight Amendment, federal courts have made it clear that the rights of convicted prisoners are governed by the Eighth Amendment, while the rights of pre-trial detainees are protected by the Fourteenth Amendment. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996). However, the Plaintiff, cannot maintain claims under both amendments. Cottrell, 85 F.3d at 1490.

The Plaintiff has failed to allege whether his decedent was a pre-trial detainee or a convicted prisoner. (See generally Doc. 1.) Nonetheless, the Court may proceed with ruling on Sheriff Meeks's motion because the analysis under either amendment is the same. Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985). Consequently, an amendment to the Plaintiff's claim adding the

14

necessary factual allegation would be futile with respect to Sheriff Meeks's entitlement to qualified immunity.

### 3.    Sheriff Meeks was not deliberately indifferent.

The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269.   The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights."  Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)).

Because the Plaintiff makes use of "Defendants" instead of specific references to each individual Defendant, it appears that the Plaintiff is making personal participation, supervisory, and customs and policy claims against Sheriff Meeks.  Through the conclusory allegations of Count I, Sheriff Meeks is alleged to have failed to provide medical care, delayed providing medical care, and provided

15

"grossly inadequate or incompetent medical care" to the decedent.  (Doc. 1 at ¶ 19.)  He is also alleged to have "sanctioned, approved, ratified, and/or failed to remedy" the medical care provided by others, and the policies and practices under which it was provided.  (Doc. 1 at ¶ 20.)

As stated by the United States Supreme Court, in order to be deliberately indifferent, an official must both know of and disregard a serious risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The Farmer deliberate indifference standard contains both a subjective component (knowledge of the risk or willful blindness on the part of the supervisory official) and an objective component (whether there was a serious risk of harm).  Id. at 838-39.  Both of these elements are missing from each of the Plaintiff's deliberate indifference theories.

As noted previously, there are no specific allegations that Sheriff Meeks was personally aware of any serious risk of harm to the decedent – just the generalized and conclusory allegation that the "Defendants" were aware.  Indeed, examining the Plaintiff's allegations against Sheriff Meeks leaves one wondering what the Plaintiff is claiming.  There are no allegations in the Complaint that Sheriff Meeks has any medical training whatsoever – let alone a medical degree.  (See generally Doc. 1.)  Consequently, it is difficult to see how the plaintiff could make specific factual allegations to support his conclusory claim that Sheriff Meeks "violat[ed] the standard of care in the relevant medical community, [or] failed to appropriately

16

alter or increase treatment for [the decedent's] condition . . ." (Doc. 1 at ¶ 14.) Other than these rather bizarre claims stemming from the Plaintiff's lumping all the Defendants together into a single allegation, there are no other facts to support any other personal participation theory against Sheriff Meeks.

Regardless of the theory, Sheriff Meeks clearly was not indifferent. As alleged in the Complaint, the Covington County Jail had one doctor and two nurses employed by Southern Health Partners, Inc. providing medical care to inmates. The actions of a sheriff without medical training placing an inmate in the care of a doctor and two nurses working for a health care organization cannot creditably be called "indifference" on the paltry facts alleged in the Complaint.

### C.   No clearly established law provided "fair warning".

The Plaintiff must show that clearly established law provided Sheriff Meeks with fair warning that his alleged conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the

17

Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

In the case at bar, clearly established law indicates that Sheriff Meeks had no duty to intervene in the plaintiff's decedent's medical treatment and that he could reasonably rely upon the Medical Defendants' medical professional decisions. See Acosta v. Watts, 281 F. App'x 906, 908 (11th Cir. 2008) (concluding that a prison official "cannot be held liable for a constitutional tort when his administrative decision was grounded in a decision made by medical personnel); Williams v. Limestone County, 198 F. App'x at 897 (holding that jail officials are "entitled to rely on medical judgments made by medical professionals responsible for prisoner care.") Howell v. Evans, 922 F. 2d 712, 723 (11th Cir. 1991)(stating [w]e do not dispute [the prison official's] right to rely on medical professionals for *clinical* determination.")(emphasis in original); Hancock v. Hood, 686 F. Supp. 2d 1240, 1257 (S.D. Ala. 2010)(stating the court or a sheriff should not be required "to substitute their medically untrained judgment for the professional judgment of the medical health professionals who treated [an inmate.")

18

As such, since the plaintiff can point to no clearly established law that would put Sheriff Meeks on "fair warning" that his alleged conduct was unlawful, the plaintiff's complaint is due to be dismissed.

## CONCLUSION

Based upon the foregoing, Sheriff Meeks requests that the Court issue an Order dismissing him from this action and awarding him costs and attorneys' fees incurred in defending this action under 42 U.S.C. § 1988.

Respectfully submitted this 1st day of September, 2010.

s/Daniel F. Beasley
Daniel F. Beasley
Robert N. Bailey, II
Attorneys for Millard H. McWhorter, M.D.;
Annette Cain, LPN, Dianne Williams, LPN,
Southern Health Partners, Inc. and Sheriff
Dennis F. Meeks
Post Office Box 2087
Huntsville, Alabama  35804
Tel. (256) 535-1100

19

CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of September, 2010 a true and correct copy of the foregoing was served on all counsel of record via electronic filing or by placing a copy of the same in the United States Mail, First Class Postage Prepaid to:

M. Adam Jones, Esq.
Jacoby & Meyers, LLC
P.O. Box 5551
Dothan, AL 36302

s/Daniel F. Beasley
Of Counsel