IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JONATHAN SHANE SPEARS,               )
*administrator,*                     )
                                     )
            Plaintiff,               )
      v.                             )    CASE NO. 2:10-CV-671-WKW [WO]
                                     )
DENNIS F. MEEKS, *et al.,*           )
                                     )
            Defendants.              )

## MEMORANDUM OPINION AND ORDER

This action arises out of the death of Edward Eugene Spears ("Decedent") while he was incarcerated as a pre-trial detainee in the Covington County, Alabama Jail. (Am. Compl. ¶ 11 (Doc. # 22).) Defendant Sheriff Dennis F. Meeks ("Sheriff Meeks") filed a motion to dismiss and a motion for attorney's fees, accompanied by a memorandum of law. (Docs. # 27-28.) Plaintiff Jonathan Spears ("Plaintiff"), administrator of Decedent's estate, filed a response in opposition to the motion (Doc. # 29), to which Sheriff Meeks filed a reply (Doc. # 31). For the reasons that follow, Sheriff Meeks's motion to dismiss and motion for attorney's fees are due to be granted.

## I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction). Personal jurisdiction and venue are adequately pleaded and not contested.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).  In ruling on a motion to dismiss, courts "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005) (citation and internal quotation marks omitted); *see also Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) ("We have held many times when discussing a Rule 12(b)(6) motion to dismiss, that the pleadings are construed broadly, and that the allegations in the complaint are viewed in the light most favorable to the plaintiff." (internal citations and quotation marks omitted)).

The now familiar *Iqbal/Twombly* pleading requirements control § 1983 pleadings involving defendants who are able to assert qualified immunity as a defense.  *Randall v. Scott*, 610 F.3d 701, 707 n.2 & 709-10 (11th Cir. 2010); (*cf.* Def.'s Mem. of Law 5-6; Def.'s Reply 1-2.).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted).  If there are "enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence" to support the claim, there are "plausible" grounds for recovery, and a motion to dismiss should be denied. *Twombly*, 550 U.S. at 556. The claim can proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (citation and internal quotation marks omitted).

### III. BACKGROUND

Plaintiff brings this action against Sheriff Meeks, Southern Health Partners, Dr. Millard Henry McWhorter III, Annette Cain, and Diane Williams alleging § 1983 violations under the Eighth and Fourteenth Amendments (Count I), and state law claims for wrongful death caused by medical malpractice (Count II) and wrongful death caused by negligent and/or wanton hiring, training, supervision, and retention (Count III). (Am. Compl.) Plaintiff's action against Sheriff Meeks is limited to Count I of the Amended Complaint, and only those allegations are at issue.[1] (Am. Compl. ¶¶ 20-27.)

The following facts, drawn from the Amended Complaint, are taken as true for purposes of this motion. On or about July 23, 2008, Decedent suffered a laceration to his lower right leg, and was treated in the emergency room of the Andalusia Regional Hospital. (Am. Compl. ¶ 10.) On or about July 27, 2008, Decedent was incarcerated in the Covington

---

[1] On September 22, 2010, during the pendency of Sheriff Meeks's Motion to Dismiss the original Complaint, Plaintiff filed an Amended Complaint within the time permitted under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. (Docs. # 15, 22, 25.) In light of the filing of the Amended Complaint, the court denied as moot the Motion to Dismiss the original Complaint. (Doc. # 25.) The present motion followed.

County Jail as a pre-trial detainee.  (Am. Compl. ¶ 11.)  During his stay at the Covington County Jail, the condition of Decedent's lower right leg grew increasingly worse.  (Am. Compl. ¶ 12.)  Sometime between July 27, and August 6, 2008, Decedent's lower leg exhibited "swelling, hotness to the touch, redness, coolness to the touch, necrotic areas, blister patches, bruising, . . . [and] weeping edema (seepage of fluids)."  (Am. Compl. ¶ 12.)  Decedent also exhibited abnormal breathing.  (Am. Compl. ¶ 12.)

On August 7, 2008, Defendants found Decedent with severe breathing difficulty, loss of coordination, and in such a condition that his pulse could not be taken.  (Am. Compl. ¶ 14.)  Defendants then had Decedent transported to the emergency room at Andalusia Regional Hospital.  (Am. Compl. ¶ 14.)  Decedent subsequently died on August 8, 2008, of "systemic sepsis due to necrotizing fasciitis of the lower right leg."  (Am. Compl. ¶ 14.)

As sheriff of Covington County, Sheriff Meeks is responsible for the housing, safety, and medical treatment of inmates at the Covington County Jail.  (Am. Compl. ¶ 2.)  Southern Health Partners ("SHP"), a corporation located in Covington County, was responsible for providing health care services to inmates at the Covington County Jail at all times pertinent to this action.  (Am. Compl. ¶ 3.)  Dr. McWhorter and Nurses Cain and Williams (collectively "Medical Professional Defendants") were employees of SHP who were responsible for the medical care of Decedent while he was incarcerated at the Covington County Jail.  (Am. Compl. ¶¶ 4-6, 12-13.)

4

Plaintiff alleges generally that "Defendants, being in complete control of [Decedent's] medical treatment, were at all times aware of [Decedent's] worsening condition or [were] willfully blind to it." (Am. Compl. ¶ 12.) Plaintiff also alleges that Sheriff Meeks was "personally aware of or willfully blind to [Decedent's] injury and the serious risk of harm." (Am. Compl. ¶ 15.)

Plaintiff alleges that Sheriff Meeks maintained a series of policies or customs that caused Decedent's death in violation of the Eighth and Fourteenth Amendments. (Am. Compl. ¶¶ 16, 20-24, 26; *cf.* Am. Compl. ¶ 19 (alleging that Medical Professional Defendants acted with deliberate indifference to Decedent's serious medical needs).) The alleged policies or customs are as follows: (1) failure to adequately staff the jail with medical personnel (Am. Compl. ¶ 20); (2) failure to train deputies and/or jail personnel on how to respond to an inmate's request or obvious need for medical attention (Am. Compl. ¶ 21); (3) failure to monitor and/or properly treat inmates who have known serious medical problems (Am. Compl. ¶ 22); (4) failure to timely allow inmates access to outside medical care (Am. Compl. ¶ 23); and (5) other policies and customs which amounted to a deliberate indifference to the serious medical needs of Decedent (Am. Compl. ¶ 24). As factual support for these allegations, Plaintiff pleads that "[t]he way in which [Decedent] died demonstrates [these] policies and customs." (Am. Compl. ¶ 25.) Further, "Defendant Meeks was aware of and disregarded the fact that these policies and customs caused a serious risk of harm to inmates

or detainees, and that his employees would act in accordance with them." (Am. Compl. ¶ 27.)

Plaintiff also pleads that Sheriff Meeks's actions constitute a willful and knowing violation of rights secured by the Constitution, thus depriving him of qualified immunity. He further alleges that "[i]t has been clearly established law for over a decade that the causal connection may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights." (Am. Compl. ¶¶ 28, 31 (internal quotation marks and citations omitted).)

Plaintiff seeks compensatory and punitive damages, attorney's and expert's fees, and all other relief which justice requires. (Am. Compl. 6.) Plaintiff demands a jury trial. (Am. Compl. 1.)

## IV.  DISCUSSION

Sheriff Meeks contends that Plaintiff did not plead sufficient factual allegations to support his claim and that Sheriff Meeks is due qualified immunity. (Doc. # 27, at 1-2.) Further, Sheriff Meeks seeks attorney's fees on the basis that Plaintiff's Amended Complaint is frivolous and/or groundless. (Doc. # 27, at 2.) Plaintiff argues against dismissal of Sheriff Meeks, but does not otherwise oppose the award of attorney's fees.

## A.    Sheriff Meeks's Motion to Dismiss

"[T]he Eighth Amendment prohibitions against cruel and unusual punishment do not apply to pretrial detainees." *Snow ex. rel Snow v. City of Citronelle, Ala.*, 420 F.3d 1262,

1268 (11th Cir. 2005) (internal quotation marks omitted). "Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). Nevertheless, the applicable standard is the same, "so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Id.*

To establish § 1983 individual liability, Plaintiff must demonstrate that (1) Decedent was deprived of a right secured by the United States Constitution, and (2) the act or omission causing the deprivation was committed by an individual acting under color of state law. *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987). To prevail on a Fourteenth Amendment claim of deliberate indifference to serious medical needs by an individual prison official, a "[p]laintiff must prove both an objectively serious medical need and that a [d]efendant acted with deliberate indifference to that need." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). To establish deliberate indifference, a "[p]laintiff must show that [an individual] [d]efendant had (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Id.*

However, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citations omitted). "The standard by which a supervisor is held liable in his individual capacity for

7

the actions of a subordinate is extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1361 (11th Cir. 2003). "Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Hartley*, 193 F.3d at 1269  (internal quotation marks and citations omitted).

Plaintiff does not allege any facts supporting Sheriff Meeks's subjective knowledge of a risk of serious harm to Decedent, disregard of such risk, or conduct on his part that exceeds gross negligence.[2]  Further, Plaintiff's Response to Sheriff Meeks's Motion to Dismiss clarifies that he is not pursuing such a theory.  (Am. Compl. ¶ 19 (accusing Dr. McWhorter, and Nurses Cain and Williams of acting with deliberate indifference toward the serious medical needs of the Decedent); Pl.'s Resp. 5-7.)

Therefore, Plaintiff's factual allegations must support a causal connection between Sheriff Meeks's actions as the supervisor of the Covington County Jail and the alleged constitutional deprivation by the Medical Professional Defendants.  "[Such a] causal connection can be established when a history of widespread abuse puts the responsible

---

[2] The allegations in Count I against Sheriff Meeks are predicated on his customs and policies, not his personal participation in the alleged constitutional violation.  Plaintiff does not allege any non-conclusory facts that Sheriff Meeks had subjective knowledge of a risk of serious harm to Decedent or disregarded such risk prior to August 7, 2008.  Plaintiff's only factual allegation of Sheriff Meeks's personal participation is that "[o]n August 7, 2008, after finding [Decedent] with severe breathing difficulty and loss of coordination to the point his pulse could not be taken, Defendants finally had Spears transported to the Andalusia Regional Hospital Emergency Room."  (Am. Compl. ¶ 14.) Although this allegation lacks detail and lumps all Defendants together, reading it in the light most favorable to Plaintiff does nothing to advance his case.  In fact, it only enhances the position that once Sheriff Meeks actually learned of Decedent's medical condition, he heeded that risk and transported Decedent to the hospital.

supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley*, 193 F.3d at 1269 (internal quotation marks and citations omitted). "In addition, the causal connection may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights." *Id.* (internal quotation marks and citations omitted); *see also Goebert v. Lee County*, 510 F.3d 1312, 1331-32 (11th Cir. 2007). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Goebert*, 510 F.3d at 1332 (internal citation omitted) (examining a claim of supervisory liability against a sheriff for deliberate indifference to a prison inmate's medical needs). "A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." *Id.* (internal citation omitted). "Demonstrating a policy or custom requires showing a persistent and wide-spread practice." *Id.* (internal quotation marks and citations omitted).

Plaintiff alleges that the causal connection can be shown because Sheriff Meeks had four discrete customs or policies that resulted in the Medical Professional Defendants' deliberate indifference to Decedent's serious medical needs.[3] (Am. Compl. ¶¶ 20-23.) As

---

[3] Plaintiff's allegation that Sheriff Meeks maintained "other policies and customs which amounted to a deliberate indifference to the serious medical needs of [Decedent]," is an impermissible "naked assertion devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks and citations omitted).

factual support for Sheriff Meeks's alleged customs or policies, Plaintiff alleges that "[t]he way in which [Decedent] died demonstrates the above policies and customs." (Am. Compl. ¶ 25.) Plaintiff makes no factual allegation of a persistent or widespread practice of deliberate indifference to prison inmates' serious medical needs in the Covington County Jail. In fact, the Amended Complaint includes no factual allegation of any decision made by Sheriff Meeks which was communicated to the Medical Professional Defendants and resulted in their alleged deliberate indifference to Decedent's medical needs. Nor has Plaintiff alleged any facts showing that Sheriff Meeks directed his subordinates to act unlawfully, or that he knew that the subordinates would act unlawfully and failed to stop them from doing so.[4] *Goebert*, 510 F.3d at 1331.

Rather, Plaintiff merely alleges that the fact and nature of Decedent's death after eleven days in the Covington County Jail demonstrates that Sheriff Meeks had a policy or custom of failing to adequately staff the jail with medical personnel, failing to train deputies and jail personnel about how to respond to an inmate's obvious need for medical attention, failing to monitor or properly treat sick inmates, and failing to timely obtain outside medical care for inmates. (Am. Compl. ¶¶ 20-23, 25.) As argued by Sheriff Meeks in his Motion to

---

[4] In his Response to the Motion to Dismiss, Plaintiff also claims an alternate theory of supervisory liability. He argues that "the First Amended Complaint alleges 'facts that support an inference' that [Sheriff] Meeks either knew Defendant Medical Professionals would act with deliberate indifference to [Decedent's] serious medical needs, or directed them to do so." (Pl.'s Resp. 5 (citing Am. Compl. ¶ 27 ("Defendant Meeks was aware of and disregarded the fact that these policies and customs caused a serious risk of harm to inmates or detainees, and that his employees would act in accordance with them.").) This allegation is simply an attempted rephrasing of his previous theory of supervisory liability, and does nothing to add factual enhancement to his claim for relief under the extremely rigorous standard of supervisory liability.

Dismiss, Plaintiff relies on a theory that sounds much like *res ipsa loquitur* to allege supervisory liability against Sheriff Meeks.  "*Res ipsa loquitur* is an appropriate form of circumstantial evidence enabling the plaintiff in particular cases to establish the defendant's likely negligence."  Restatement (Third) of Torts: Liability for Physical Harm § 17 (2005) (Comment).  However, a plaintiff may not resort to such doctrine to state a plausible § 1983 claim for deliberate indifference to medical needs against an individual prison official, much less to state a plausible claim for relief under the extremely rigorous standard of supervisory liability.  *See Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (The doctrine of *res ipsa loquitur* is insufficient to establish an Eighth Amendment deliberate indifference to medical needs claim against individual prison officials because the standard of care in this area is not negligence.).  Plaintiff's claim for supervisory liability against Sheriff Meeks is devoid of sufficient factual content to make it facially plausible.

A review of the two cases relied on by Plaintiff in his Response to the Motion to Dismiss only confirms the deficiencies in his Amended Complaint.  (Pl.'s Resp. 3-4.) Plaintiff cites an Eleventh Circuit case and an Alabama Supreme Court case in support of his argument that he has pled sufficient factual support to state a claim of supervisory liability against Sheriff Meeks.  *See Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227 (11th Cir. 2010); *Ex parte Hale*, 6 So. 3d 452 (Ala. 2008).  Both cases are easily distinguishable from the case

at bar.  First, in *Harper*, a pre-*Randall* case,[5] the Eleventh Circuit held that the plaintiff had stated a claim for supervisory liability against jail officials for their improper customs and policies which resulted in that pre-trial detainee's death from alcohol withdrawal.  Unlike Plaintiff in this case however, the plaintiff in *Harper* pled factual support for her allegation that jail officials had customs or policies that resulted in that decedent's death.  Specifically, the *Harper* plaintiff alleged that only a month earlier, an incident strikingly similar to what had happened to the *Harper* detainee occurred in that same jail.  592 F.3d at 1236.  In that similar incident, a pre-trial detainee suffering from alcoholism did not receive a proper medical screening, was not treated for alcohol withdrawal, and was told he would not receive medical treatment because he was not bleeding.  *Id*. at 1236-37.  *Harper* only highlights the factual deficiency in Plaintiff's Amended Complaint.

The Alabama Supreme Court's holding in *Hale* also has no bearing on the sufficiency of Plaintiff's Amended Complaint under *Iqbal* and *Twombly*.  *Hale* was decided by the Alabama Supreme Court prior to *Iqbal*, and was plainly decided under the now federally defunct "any set of circumstances" standard for determining the sufficiency of pleadings on a motion to dismiss.  *See Hale*, 6 So. 3d at 458 n.5, 461; *see, e.g.*, *McKelvin v. Smith*, No. CV-09-900847, 2010 WL 50300130, at *4 (Ala. Civ. App. 2010) ("[The Alabama Supreme Court] has adopted the standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), for the

---

[5] The fact that *Harper* was decided under the pre-*Randall* Eleventh Circuit § 1983 heightened pleading standard is inconsequential and does nothing to demonstrate that Plaintiff pled sufficient factual support to clear the *Iqbal* hurdle.

dismissal of claims under Rule 12(b)(6), Ala. R. Civ. P.  Until such time as our supreme court decides to alter or abrogate this standard, we are bound to apply it, the United States Supreme Court's decision in *Twombly* notwithstanding." (internal quotation marks and citations omitted)); *cf. Twombly*, 550 U.S. at 563.  Further, a review of the portions of *Hale* cited by Plaintiff demonstrates that the reasoning therein was based on a pure application of *Conley*, and not on a finding of sufficient factual allegations to make the plaintiff's supervisory liability claim plausible.  *See Hale*, 6 So. 3d at 461-62 (finding that a formulaic recitation of the alleged customs or policies and the other elements of supervisory liability was sufficient to survive a motion to dismiss under Alabama law).  *Hale* provides no support for Plaintiff's Amended Complaint.

Finally, Plaintiff alleges in conclusory fashion that "[t]he above policies are causally connected with the unconstitutional conduct that harmed [Decedent] . . . ."  (Am. Compl. ¶ 26.)  Such a conclusory allegation, devoid of any other factual enhancement exhibiting how or why Sheriff Meeks's customs or policies resulted in the Medical Professional Defendants' deliberate indifference to Decedent's medical needs, is also insufficient to clear the hurdles of *Twombly* and *Iqbal*.[6]

---

[6] The Amended Complaint, which was Plaintiff's second attempt to plead a viable § 1983 claim against Sheriff Meeks, falls woefully short of the requirements of *Iqbal* and *Twombly*.  Plaintiff does not argue, in the alternative, that further amendment could save his claim, nor does he ask for leave to amend in opposing Sheriff Meeks's motion to dismiss.  On this record, the court concludes that a third chance for Plaintiff to plead his claim against Sheriff Meeks would be futile.

13

The court need not address Sheriff Meeks's defense of qualified immunity, because Plaintiff has failed to state a valid constitutional claim against him.

## B.      Sheriff Meeks's Motion for Attorney's Fees

Sheriff Meeks also moves for attorney's fees on the grounds that Plaintiff's claims against Sheriff Meeks have "absolutely no legal or factual basis."  (Meeks Mot. to Dismiss 17.)  Plaintiff does not oppose Sheriff Meeks's motion for attorney's fees, other than to argue that dismissal is improper.  (Pl.'s Resp. 1-7.)

A court may award attorney's fees under § 1988 to a prevailing defendant where the court finds that "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (quoting *Christianburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421 (1978)).  "In determining whether a suit is frivolous, a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful."  *Sullivan v. School Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1189 (11th Cir. 1985).  To determine whether a suit is frivolous, the following factors are considered: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits."  *Id.*

Plaintiff's supervisory liability claim against Sheriff Meeks is so lacking in arguable merit that an award of attorney's fees is warranted.  First, Plaintiff failed to allege facts in

support of a prima facie case of supervisory liability against Sheriff Meeks.  Second, Sheriff Meeks did not offer to settle this case.  (Doc. # 28, at 18.)  Third, Plaintiff's sole claim against Sheriff Meeks fails on a motion to dismiss, long before trial.  Fourth, the sole factual basis for Plaintiff's factual allegation of supervisory liability against Sheriff Meeks was the fact of Decedent's death.  As discussed *supra*, such an allegation is insufficient to support individual liability for deliberate indifference to medical needs, much less meet the exceedingly high bar of supervisory liability.  Accordingly, Sheriff Meeks is entitled to an award of reasonable attorney's fees for his defense of this groundless aspect of Plaintiff's Amended Complaint.

## V.  CONCLUSION

Accordingly, it is ORDERED that Sheriff Meeks's Motion to Dismiss and Motion for Attorney's Fees are GRANTED (Doc. # 27), and that Plaintiff's claim against Sheriff Meeks is DISMISSED with prejudice.  Sheriff Meeks is DIRECTED to submit an affidavit **on or before May 13, 2011**, detailing his reasonable attorney's fees incurred in defending this matter.  Plaintiff shall respond **on or before May 27, 2011**.

DONE this 26th day of April, 2011.

/s/ W.  Keith Watkins
UNITED STATES DISTRICT JUDGE